No. 23,190.

THE STATE OF KANSAS, *ex rel.* RICHARD J. HOPKINS, as Attorney-general, etc., *Plaintiff,* V. L. J. PETTIJOHN, as Secretary of State, etc., *Defendant.*

### SYLLABUS BY THE COURT.

1. ELECTIONS—*Form of Official Ballot—How Presidential Electors are to Be Chosen.* The names of party candidates for presidential electors on the official ballot should not be followed by squares, the statute providing that they may be, voted for collectively by placing a cross in the square opposite the names of the nominees of the party for president and vice president, and that "no other space or margin shall be left in any such group of candidates." The fact that the sample ballot which accompanies the text shows squares opposite the individual names does not control, because the form there given, being illustrative and explanatory, must in case of conflict yield to the language of the statute. One who prefers not to vote for any group as a whole may write in the blanks provided for the purpose the names of such persons as he may see fit, whether or not they are included in any of the groups, and complete the act of voting for them by placing crosses in the corresponding squares.

2. SAME—*Official Ballot—Names of Presidential Electors Need Not Be Rotated Thereon.* The names of the candidates of a political party for presidential electors as printed upon the official ballot do not require to be rotated.

3. SAME—*Official Ballot—Names of Candidates for Congress Follow Names of Candidates for State Offices.* The names of candidates for congressmen should be printed upon the official ballot following those of candidates for state offices.

Original proceedings in mandamus. Opinion filed September 27, 1920. Application allowed in part and denied in part.

*Richard J. Hopkins,* attorney-general, for the plaintiff.

*S. M. Brewster,* of Topeka, for the defendant.

The opinion of the court was delivered by

MASON, J.: Several questions have arisen concerning the precise form in which the official ballot for use at the coming election should be printed. In order that these may be authoritatively decided in time for the decision to be made effective, the attorney-general has brought this action against the secretary of state challenging the correctness of the form prepared by him for certification to the county clerks, and asking an order directing certain changes to be made therein.

1. The principal question involved is whether the statute requires a square for the use of the voter to be placed opposite the name of each of the candidates for presidential electors nominated by the several political parties, or whether a single square opposite the names of the candidates of each party for president and vice president is all that is necessary. The doubt upon the subject arises from the fact that while the latter practice is indicated by the language of the body of the act, the "sample ballot" which is made a part of it does not conform thereto. The purpose of the sample ballot is largely illustrative and explanatory, and while it must control as to matters not otherwise provided for, and may throw light upon the meaning of an ambiguous provision of the text, it must yield to a positive declaration with which it is in conflict.

As already suggested, the sample ballot included in the statute calls for a square opposite the name of each candidate for elector. It is introduced, however, by the phrase "All as is shown in the accompanying sample ballot," showing that its purpose is merely to illustrate, explain and perhaps amplify the detailed directions concerning the form of the ballot by which it is preceded—certainly not to nullify any of them. These directions conclude thus:

"The names of candidates for presidential electors shall be arranged in groups as presented in the several certificates of nomination or nomination papers. The groups shall be arranged in the alphabetical order of the surnames of the candidates for president. The surnames of the candidates of each political party for the offices of president and vice president with the political designation thereof at the right of the surnames, shall be placed in one line above the group of candidates of such party for electors. A sufficient square in which each voter may designate by a cross $\times$ his choice for electors shall be left at the right of each

The State, *ex rel.*, v. Pettijohn.

political designation; and no other space or margin shall be left in any such group of candidates. All as is shown in the accompanying sample ballot." (Laws 1913, ch. 189, § 1, Gen. Stat. 1915, § 4208.)

We regard it as clear that the words "and no other space or margin shall be left in any such group of candidates" mean that no provision shall be made and no opportunity be given for placing a cross opposite the name of any individual elector included in the group. The manifest purpose of the provision is that one who wishes to vote for all the electors nominated by the party whose candidates for president and vice president he favors may give effective expression to that wish by merely placing a cross in the square at the right of the names of the party's nominees for president and vice president—just as under a former practice a vote for an entire party ticket was registered by placing a cross in a circle under the emblem at the head of the column.

The sentences above quoted are taken without change from the Massachusetts statute upon which the amendment of the election law of this state enacted in 1913 was largely founded. (Supp. Rev. Laws Mass., 1902-1908, ch. 11, § 232.) In that state it has received the practical interpretation which we adopt, as is shown by an official specimen ballot presented at the hearing, in which only one square is used in connection with a group of candidates for presidential electors—and that is placed opposite the names of the party candidates for president and vice president. Not only is no square used after the name of an individual elector, but no blank space is left there in which a voter might be tempted to place a cross; the portion of the line not occupied with the name and residence of the candidate is filled to the edge of the column with a scroll, so that the statute is literally complied with and no space or margin is left.

No sample ballot is contained in the Massachusetts statute. The one inserted in the Kansas act conflicts in another respect with the language of the act already quoted. Instead of the groups of nominees for presidential electors being arranged in the alphabetical order of the surnames of the candidates for president, the name of Wilson appears first, that of Taft second and that of Debs third. Of course no one would doubt

29—107 Kan.

that the explicit direction should control. Another discrepancy in a less important matter is the use of the full names of the candidates instead of merely the surnames.

The conclusion we have reached seems to us to follow necessarily from the language used. It also appears to accord fully with the spirit of the act. As is well understood, a presidential elector was originally expected to exercise his own judgment in casting his vote as a member of the electoral college. He is now regarded as a mere representative of his party, selected to voice its choice in the matter. The voting for a list of presidential electors is with the vast majority a mere form by which they seek to give expression to their preference for the offices of president and vice president, being utterly indifferent as to the persons through whom legal effect is to be given to their action. What the legislature evidently had in mind was to simplify the process by which voters of that type may indicate their choice. But the form as prepared by the secretary of state does not deny to the exceptional voter, in the rare instance in which he is not satisfied with any of the groups for whom he may vote by marking a cross in a single square, the privilege of voting for whatever persons for electors he may see fit. In accordance with another provision of the section of which those already quoted are a part, ten blank spaces are left on the ballot, at the end of the lists of candidates for electors, in which the voter may write whatever names he pleases, whether or not they are included in any of the preceding groups—even if he should be so eccentric as to prefer to vote, for instance, for five republicans and five democrats. The prohibition found in the same section that "no name that is printed on the ballot can be written elsewhere on the ballot" does not apply to that situation. Its intention is not to restrict the choice of the voter in the slightest degree. It merely requires him, where provision has been made for his voting for a particular person by placing a cross in the square opposite the name of that person as printed on the ballot, to pursue that method and not unnecessarily write in the name in a blank space. While the name of each individual nominated by a political party for a presidential elector is literally printed on the ballot, it is not so printed within the spirit and meaning of the prohibition in question. It is not printed on the ballot in

such a manner as to enable the voter to make use of the printed name in voting for that particular candidate individually. It appears only as one of a group the persons designated in which can be voted for, by means of the printed names, only in a body. They must be voted for, in that place, collectively or not at all. The fact that their names are not printed on the ballots as individuals does not constitute a departure from the statutory requirement that the names of persons duly nominated shall be placed thereon, for their names are tendered to the voters in accordance with the intention of the organizations— the political parties—nominating them—in groups which collectively represent the presidential and vice presidential candidates whom they are pledged to support by a custom and understanding so strong as to have almost the force of positive law. They are nominated by their party, not to run for the office of elector in competition with each other, but to be submitted in a block, to be accepted or rejected as a whole; and the statute recognizes this fact and undertakes to spare the normal voter the necessity of marking ten crosses where one will answer the purpose.

In the form of ballot prepared by the secretary of state these paragraphs are printed at the head of the electoral tickets:

"If you wish to vote for the group of electors nominated by one of the political parties place a cross (×) in the square opposite the names of the candidates of that party for president and vice president.

"If you do not wish to vote for the group of electors nominated by any of the political parties you may write in the blank spaces, found below, the names of all the electors for whom you wish to vote, placing a cross (×) in the square at the right of each."

The statute, in the section already quoted from, authorizes such directions as will aid the voter, to be printed upon the ballot, and these are appropriate as tending to prevent a failure on the part of the voter to •understand the method to be pursued in voting for electors.

2. A question incidentally involved is whether the names of candidates for electors are required to be rotated. The provision that "the names of candidates for presidential electors shall be arranged in groups as presented in the several certificates of nomination or nomination papers" might indicate that the order used in such certificates should be followed.

The provision that "the groups shall be arranged in alphabetical order of the surnames of the candidates for president" appears to refer to the order in which the several groups shall be printed and to have no relation to the order of the names in each group. In the same section it is provided with respect to candidates generally that their names shall be rotated on the ballot—shall be so arranged that each shall have an equal opportunity. We regard this provision as having no application whatever to the candidates of a party for presidential electors. Inasmuch as they are voted for collectively (if their names as printed on the ballot are made use of by the voter) there could be no possible purpose in the rotation.

3. The other question requiring to be settled is whether the names of the candidates for congress should appear on the ballot following those of candidates for the United States senate (which immediately follow the electoral ticket), as indicated in the form prepared by the secretary of state, or following those of candidates for state offices, as suggested by the attorney-general.

The text of the section already discussed (Gen. Stat. 1915, § 4208) makes no reference to the order in which the candidates for different offices shall be arranged unless it is to be found in the opening sentence, providing for the printing on the ballot of the names of all candidates for "national, state, congressional, legislative, judicial and county officers." A congressman is in a sense a national officer, but inasmuch as a separate class is made of "congressional" candidates it is clear that they were not intended in this particular classification to be included under the other and more general term. If the order in which the classes of candidates are named in this preliminary statement is to be taken as indicating their sequence on the ballot, then the names of the congressional candidates should follow those for state offices. This is the order shown by the sample ballot, and inasmuch as it is not in conflict with anything in the body of the act we think it must be followed.

The original sample ballot printed as a part of the Australian ballot law of this state showed the names of no candidates other than for state offices, and only a part of them. (Laws 1897, ch. 129, § 14.) The first amendment of the section cited contained parts of the electoral, state and county

tickets, without specific reference to the candidates either for United States senator or for congressman, but the names of the nominees for presidential electors shown were followed by the words: "And continuing in like manner as to all candidates on national ticket." (Laws 1901, ch. 177, § 6.) In that condition of the statute it would doubtless have been proper to regard congressional candidates as covered by the word "national" and to place their names on the ballot preceding those of candidates for state offices. In 1905 the words just quoted were retained, United States senators were not mentioned, but the candidates for congress were placed after the state officers. (Laws 1905, ch. 222, § 1.) In the sample ballot of the present law the words referring to the national ticket are omitted and the order indicated by the 1905 act is retained. The making of these various changes seems fairly to show that the place upon the ballot to be occupied by the names of congressional candidates is a matter that has received the attention of the legislature and to strengthen the argument in favor of following the prescribed form in this regard.

In a statute passed in 1915 to facilitate the count by providing for double election boards and separate ballots it was provided that "the national and state tickets shall be printed upon one ballot, and the district county and township tickets shall be printed upon another ballot." (Laws 1915, ch. 205, § 1.) Under this provision we think it clear that the office of congressman should be classified as "national" rather than as "district," and the names of candidates therefor should be placed upon the general rather than the local ballot. But this cannot affect the interpretation of the act here involved which was passed in 1913, because it makes no reference to it, is not in any way in conflict with it, and can shed no light upon what was in the mind of the legislature.

It follows from what has been said that the form of ballot prepared by the secretary of state should stand without change, except that the names of the candidates for congress should follow those of candidates for state offices instead of those of candidates for United States senator. The application of the plaintiff is therefore held to be well founded so far as relates to that matter, but not otherwise. It will of course be unnecessary that any writ shall issue.